IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2007

## CALVIN LEWIS HILL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 16837   Robert G. Crigler, Judge**

_____

**No. M2006-00666-CCA-R3-PC - Filed on June 21, 2007**

_____

The Petitioner, Calvin Lewis Hill, was convicted of car jacking, theft of property valued over $1000.00, and forgery, and his convictions were affirmed on direct appeal. He petitioned for post-conviction relief claiming that he had received the ineffective assistance of counsel at trial. The post-conviction court dismissed the post-conviction petition, and we affirm that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Richard L. Tennent (on appeal), Nashville, Tennessee, and Jheri Beth Rich (at post-conviction relief hearing), Lewisburg, Tennessee, for the Appellant, Calvin Lewis Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Charles Crawford, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Facts**

The facts of the case were stated on direct appeal as follows:

Maysene Henson testified that, on May 29, 2003, she had a checking account at First Farmers & Merchants Bank. She said that she had a checkbook for that account that she kept in a purse in her car. Henson testified that, on May 29, 2003, she was driving her 1992 Chrysler New Yorker, worth between $1200.00 and $1500.00, attempting to find cardboard boxes in order to help her son move some

items.  She said that she went to Tietgens Super Rama Market ("Market") around 1 p.m. to look for boxes, and she pulled off the side of the road behind the store. Henson said that she left her car running when she got out of her car and gathered some boxes, and, as she was getting into her car, she was "shoved" aside by someone behind her.  She said that, after she was pushed out of the way, someone got into her car, slammed the door, and drove away "real, real fast."  Henson said that she suffered bruises as a result of being pushed away from her car.  She identified the person who took her car as a "black slender male with short hair," and she said he was "about 5'5" tall."  Henson said that her purse and billfold, which contained her checkbook and $1.60 in cash, were in her car when it was taken.

Henson testified that, shortly after the car was taken, a man she knew named Tommy Allen stopped his car at a nearby stop sign and asked her what had happened. She told him that her car had been taken, and he followed her car through the Market's parking lot and out of her sight.  Henson testified that the Market's manager called the police.  Henson testified that, shortly after the car was taken, she received a call from an employee of her bank named Shannon Barker inquiring about some checks, and she told Barker what had happened and not to cash any checks on her account.  She said that the police located her car, and, when they returned it to her the following day, the front seat was "a little messy."  Henson said that when her billfold was returned to her there was $1.60 in cash and six checks, numbers 1434 to 1439, missing.  One of the checks, number 1434, was "wadded up," laying on the floor of her car.  She said that check number 1439 was filled out, dated May 29, 2003, and made payable to "Calvin Hill" in the amount of $230.00.  The check stated that it was "for car work." Henson said that she did not fill out or sign this check, and she did not know anyone named Calvin Hill prior to this incident.  Further, she did not owe anyone named Calvin Hill any money for car work.  Henson testified that, on the back of the check was Calvin L. Hill's signature, and she said that the Defendant's name was Calvin L. Hill.  On cross-examination, Henson testified that she never saw the man who took her car.

Tommy Allen testified that on May 29, 2003, he was near the Market around 1:00 p.m., and he saw Henson, whom he had known for approximately thirty years. He said that he was in his car, stopped at a stop sign, when he noticed Henson and "a black guy" near the dumpster where the Market kept their discarded cardboard boxes.  As Henson looked like she was getting into her car, he noticed the man "shove" her "back a little bit" and jump into her car and drive away.  He said that Henson called to him and said "Tommy, follow that car and bring my car back." Allen testified that he followed the car for some distance, but then he lost sight of the car.  He said that he then went back to the Market where the police were waiting for him.  On cross-examination, Allen testified that he was approximately twelve to fifteen feet away from Henson when the man pushed her, and he was unable to identify the man because he never saw his face.

Barry Hargrove, a sergeant with the City of Lewisburg Police Department, testified that he located a car belonging to Henson on May 29, 2003, at around 2:50 p.m., after looking for it for approximately one hour. He said that, when he located the car, which was approximately one mile from the Market, the front passenger seat was in "disarray," and the keys were on the floorboard.

Daryl Birdsong, an officer with the City of Lewisburg Police Department, testified that on May 29, 2003, he responded to a call about a carjacking behind the Market at around 1:02 p.m. He said that he interviewed both Henson and Allen and alerted police to watch for Henson's car. He said that later that same day, at around 2:30 p.m., he responded to a call at the First Farmers & Merchants Bank, where he arrested the Defendant. Mike Nance, an officer with the City of Lewisburg Police Department, testified that, on May 29, 2003, he responded to a call at the First Farmers & Merchants Bank, and he assisted in the Defendant's arrest.

Shannon Barker testified that she was an employee of First Farmers & Merchants National Bank on May 29, 2003, where she was working as a teller at around 1:30 p.m., when the Defendant came to cash a check on Maysene Henson's account. Barker testified that the legal line of the check contained misspellings and was not written out correctly, so she told the Defendant that she could not cash this check. She said that, a couple of minutes later, the Defendant came to her teller station again with a different check attempting to cash it on Henson's account. She said that the check was still not written out properly. Barker testified that, at this time, she began thinking that something was wrong, so she attempted unsuccessfully to call Henson while the Defendant was standing there. She told the Defendant that she could not cash his check, and he left. Barker said that, because she still suspected that something was "amiss," she again called Henson, and, after reaching her, she learned about the circumstances leading up to the Defendant's arrival at the bank. She said that she then called and emailed the other branches of her bank to tell them not to cash any checks on Henson's account, and she told them to watch for a black male attempting to cash a check on this account. Barker identified the bank surveillance videotape recording, which showed the Defendant entering the bank, standing at her teller station, leaving, and then returning a short time later. Barker testified that check number 1439, which was admitted into evidence, was not the same as either of the checks that the Defendant presented to her. On cross-examination, Barker testified that she never saw who filled out these checks, and she could not be sure that the Defendant filled out the checks.

Shirley Bledsoe, an employee with First Farmers & Merchants Bank who works at a different branch from Barker, testified that she was working as a teller on May 29, 2003, when, at around 2:30 p.m., she received information from Barker to watch for a black male attempting to cash a check on Henson's account. She said

3

that, a short time later, the Defendant came in and attempted to cash check number 1439, which was written out correctly in the amount of $230.00, on Henson's account. Bledsoe said that, at that time, she did not assume that the Defendant was the man who took Henson's checks, and she handed the check to her supervisor and told the Defendant that her supervisor would have to call Henson. Bledsoe testified that, during this time, another employee was calling the police, and the Defendant stood at her teller station until the police arrived and placed him under arrest. Bledsoe identified the bank's surveillance videotape recording that showed the Defendant entering the bank and coming to her teller station. On cross-examination, Bledsoe testified that she did not see who filled out the check that the Defendant attempted to cash.

Danny Kirbo, a corrections officer at the Marshall County Jail, testified that he took the Defendant's palm prints on May 30, 2003, at Detective Whitsett's request, and those prints were admitted into evidence. Don Lombardy, a corrections officer with the Marshall County Sheriff's Office, testified that he took the Defendant's fingerprints. On cross-examination, both officers testified that it was standard procedure for them to take the prints, but they did not know why the prints were requested.

James Whitsett, a detective with the Lewisburg City Police Department, testified that, as part of his investigations, he has been trained to, and does "lift" fingerprints from items. The detective testified that he was advised where Henson's car was located, and, after the car was taken to the police station, he photographed the car, "lifted" fingerprints, and looked for other evidence in the car. The detective said that he attempted, but was unable, to obtain fingerprints from Henson's car. Detective Whisett testified that he found Henson's billfold in her car, and he processed it for fingerprints. He said that he found fingerprints on the checkbook register, the checkbook cover, and check number 1434, which was on the floor of the car, and on the car itself. Detective Whitsett said that he found some prints that were too large to be fingerprints on some of these items, so he asked Officer Kirbo to take the Defendant's palm prints. The detective sent the fingerprints found in the car, along with the Defendant's fingerprints, to the Tennessee Bureau of Investigation ("TBI") crime lab for analysis. On cross-examination, the detective testified that he did not send Henson's fingerprints to the TBI crime lab to be compared to those fingerprints he found on the items in her car.

David Hoover, a fingerprint examination expert with the TBI, testified that he was only able to find one identifiable fingerprint from all of the items sent by Detective Whitsett. He said that he identified the Defendant's fingerprint on check number 1434, and he identified the Defendant's left palm print on the checkbook cover. On cross-examination, Agent Hoover testified that he did not find any other fingerprints on the checkbook cover, other than the palm print.

The Defendant testified that on May 29, 2003, at around 1:00 p.m. he was at his apartment. He said that he was sitting in front of his apartment, waiting for his mailman to deliver his unemployment check, when a friend came down the street. He said that his friend presented a check to him for $230.00 and told him that, if he could get it cashed, he would get $200.00 and his friend would keep $30.00. The Defendant admitted, "I am guilty of trying to pass a forged instrument," but denied that he "carjacked a woman." The Defendant reiterated that he was not at the Market on the day of this incident.

On cross-examination, the Defendant said that his apartment was a thirty-five to forty minute walk from the Market, and he said that he did not own or have access to a car. The Defendant conceded that the videotape recording from the bank showed him entering the bank at 1:27 p.m. He said that he and the man who presented him with the check walked to the bank together, but the other man did not enter the bank with him, and, therefore, the other man was not on the bank's videotape recording. The Defendant testified that the check for $230.00 was the only check that he had ever seen, so Barker must have been mistaken when she testified that he attempted to cash two other checks. The Defendant testified that he had never seen the man who presented him with the check prior to this incident, but he was a "black man." He said that he attempted to give a description of this man to the detective, but the detective was angry and would not allow him to provide a description. The Defendant said that he was 5' 5" tall, which matched Henson's description of him. The Defendant said that, when the man approached him with the check, all he saw was the check, he never saw the checkbook or the checkbook register, and he said that he never touched either of them. The Defendant asserted that the police planted his palm print on the checkbook register. The Defendant conceded that, when he was arrested he had a folded one dollar bill and eighty-four cents in his pockets. He said that he remembered Henson testifying that she had a folded one dollar bill and two quarters in her billfold when her car was taken.

State v. Calvin Louis Hill,[1] No. M2004-00597-CCA-R3-CD, 2005 WL 544710, at * 1-4 (Tenn. Crim. App., at Nashville, Mar. 8, 2003), *perm. app. denied* (June 27, 2005).

The Petitioner filed a pro se petition for post-conviction relief after his conviction, which was amended by appointed counsel. The Petitioner alleged that he was denied effective assistance of counsel because his trial counsel failed to adequately investigate whether the police had "planted" the Petitioner's fingerprints in the evidence relating to the crime. At the post-conviction hearing, Petitioner's counsel at trial, Mike Collins ("Counsel"), testified that he did not recall whether he

---

[1] We note that the spelling of the Petitioner's middle name in his first appeal was "Louis," but it appears as "Lewis" in the record currently before us.

spoke with the detective about the Petitioner's fingerprints at the Petitioner's preliminary hearing. The Petitioner told Counsel that the Detective Whitsett planted the Petitioner's palm print in the evidence relating to the crime. Counsel provided the following explanation as to why he did not investigate whether someone had planted the Petitioner's fingerprints in the evidence relating to the crime:

> There would be no way to actually investigate whether someone actually had planted that. However, I think it is highly unlikely because the TBI agent matched that with some 20 something points of similarity which the FBI said, I believe, 12 is a very positive match. That was double what was needed. It was a good print. To my knowledge transferring a print is not something that is very easy to do. It is basically body oil from the hand or the finger.

Counsel instructed investigators to speak with witnesses in the case. At trial, the Petitioner told Counsel about two witnesses, Bobby James Mosley and Dwayne T. Simmons, inmates at the Marshall County Jail who could testify about Detective Whitesett's tendency to plant fingerprints. Counsel asked the trial court to call these men as witnesses and provided the trial court with a summary of their expected testimony. The trial court refused to call these men as witnesses after determining that their testimony was irrelevant and that the rules of evidence prohibited such testimony. Counsel could not recall the specific rule of evidence upon which the trial court relied when it decided to prohibit these men from testifying. Counsel did not recall speaking with the Petitioner about these witnesses before the trial and did not recall the Petitioner ever requesting that subpoenas be issued for the two jail inmates prior to the day trial began.

The Petitioner testified that someone used a machine to take his fingerprints on the night he was arrested. Three days after his arrest, someone claimed that the Petitioner's arrest warrants and fingerprints had been lost and that additional prints were needed. The Petitioner asserted that prints taken from the victim's car did not match his fingerprints, and then someone claimed to have lost his fingerprints. The Petitioner testified that when someone took the next set his of fingerprints, that individual claimed that the machine was broken and took the prints manually. The Petitioner claimed that this individual took his fingerprints manually at Detective Whitsett's request. After someone took these additional prints from the Petitioner, someone found the Petitioner's palm print on the victim's checkbook. The Petitioner asserted: "That was awfully strange to me after the fact they requested that this manual print and my left hand palm print pops up inside a women's purse. I am right handed. It is just impossible." The Petitioner testified that he told Counsel to subpoena Bobby James Mosley and Dwayne T. Simmons before the trial began. The Petitioner denied testifying about his fingerprints at trial.

On cross-examination, the Petitioner acknowledged that, at trial, he asserted that the police had planted his palm print on a checkbook. He acknowledged that the trial court denied Counsel's request to have Mosley and Simmons testify on behalf of the Petitioner and that these men could have arrived at the trial within ten minutes had the trial court granted Counsel's request. The Petitioner acknowledged that he had no evidence that his fingerprints or palm prints had been

planted.

The trial court concluded that the Defendant was not denied the effective assistance of counsel with the following statement: "All I can do is decide the case based on the evidence before me. I find that [Counsel] met the requirements of counsel based on the evidence before me and required by Strickland versus Washington and will respectfully deny your petition."

## II. Analysis

On appeal, the Defendant contends that he was denied the effective assistance of counsel, and the trial court erred when it dismissed his petition for post-conviction relief. Specifically, he contends that counsel failed to adequately question the prosecution's presentation of fingerprint evidence.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

7

Strickland v. Washington, 466 U.S. 668, 687 (1984); accord State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Strickland, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Finally, we note that a petitioner in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House, 44 S.W.3d at 515 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When a claim of ineffective assistance of counsel is predicated upon a failure to investigate, the petitioner is obligated to show what a reasonable investigation would have revealed. Owens v.

State, 13 S.W.3d 745, 756 (Tenn. Crim. App. 1999).  Trial counsel is under no duty to conduct further investigation which would be futile or to file motions which are non-meritorious.  Michael H. Hart v. State, No. W2006-00783-CCA-R3-PC, 2007 WL 778827, at *5 (Tenn. Crim. App., at Jackson, Mar. 15, 2007).  The mere allegation that the trial counsel failed to act in some manner or failed to provide a specific legal service does not equate to a finding of deficient performance.  Id. To establish ineffective assistance of counsel, as alleged, requires "clear and convincing proof" that if counsel had performed as suggested, counsel's efforts would have yielded favorable results for the Petitioner.  Id.

The evidence does not preponderate against the findings of the post-conviction court.  The Petitioner argues that his trial counsel should have investigated his claims that Detective Whitsett planted the Petitioner's fingerprints in the evidence relating to the crime.   First, we note that the Petitioner has failed to establish what an investigation into the alleged planting of fingerprints would have revealed.  Besides his own self-serving testimony, the Petitioner presented no evidence at the post-conviction hearing to support his allegations about the planted fingerprints.  The Petitioner has failed to establish that further investigation regarding whether the Petitioner's fingerprints were "planted" into evidence would have yielded favorable results for the Petitioner.  In our opinion, the record before us, without more, is inadequate to support a determination that trial counsel's investigation was constitutionally deficient.  The Petitioner is not entitled to relief on this issue.

### III.  Conclusion

Based on the foregoing reasoning and authority, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE